IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF THE CHICAGO REGIONAL COUNCIL OF CARPENTERS PENSION FUND, CHICAGO REGIONAL COUNCIL OF CARPENTERS WELFARE FUND, and CHICAGO REGIONAL COUNCIL OF CARPENTERS APPRENTICE & TRAINEE PROGRAM FUND,<br><br>Plaintiffs,<br><br>vs.<br><br>RITEWAY-HUGGINS CONSTRUCTION SERVICES, INC.,<br><br>Defendant. | Case No. 07 C 6623 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The trustees of the pension, welfare, and apprentice and trainee program funds of the Chicago Regional Council of Carpenters (the Funds) have sued Riteway-Huggins Construction Services, Inc. (Riteway) under section 502(a)(3) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §1132(a)(3), and section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. §185(a). The Funds seek to collect contributions they claim Riteway owes for time worked by its and its subcontractors' employees. The Funds have moved for summary judgment on the issue of liability. For the reasons stated below, the Court grants the motion in part and denies it in part.

**Facts**

Because the Funds have moved for summary judgment, the Court views the facts in the light most favorable to Riteway and draws reasonable inferences in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The Funds receive contributions from employers pursuant to collective bargaining agreements (CBAs) between the employers and the Carpenters Union (Union). Riteway, a commercial construction company, is a signatory to a CBA with the Union. Under the CBA, Riteway is required to submit to the Funds monthly reports listing the hours worked by its carpenter employees and make corresponding contribution payments. The CBA also prohibits Riteway from subcontracting work within the jurisdiction of the Union to a non-signatory entity that does not meet the CBA's wage, fringe benefit, work hours, and work conditions requirements. An employer that subcontracts such work to a non-signatory entity must require the subcontractor to be bound by the CBA or must maintain records of the work hours of the subcontractor's employees and make the corresponding payments to the Funds.

To determine Riteway's compliance with the CBA, the Funds hired an accounting firm to audit Riteway's books and records. The audit covered the period from October 2003 through June 2006.

The audit showed the following unreported hours for which the Funds allege Riteway owes contributions: 381.5 hours due to clerical error; 32 hours for work performed by a Riteway carpenter named Willie Lee prior to the time Riteway began reporting hours; payments to non-signatory subcontractors Red Flooring and Vanique Custom Designs; payments to non-signatory subcontractor Busy Hands & Feet

Construction (BH&F) for hours worked prior to October 2004 and three other categories of payments; and payments to an entity called Huggins Enterprises.

Riteway has admitted liability for contributions owed for the 381.5 hours attributable to the clerical error, the hours worked by Willie Lee, and the hours worked by Red Flooring and Vanique Customs Design workers. This leaves the Funds' claims regarding BH&F and Huggins Enterprises.

1. **Busy Hands and Feet**

About June 2004, Riteway contracted with BH&F, a drywall subcontractor, to perform drywall installation and painting at a job site known as Madden Wells/Arches of Oakwood. It is undisputed that drywall installation work falls within the scope of the CBA and that BH&F was not a signatory to the CBA during the period in question.

In September 2004, the Union sent Riteway a letter alleging that it was in violation of the CBA for subcontracting covered work to BH&F. Because BH&F was unable to obtain a bond from the Union, Riteway placed BH&F's carpenter employees on Riteway's payroll and began reporting hours to the Funds in October 2004. The last month for which Riteway reported hours worked by BH&F was June 2005.

Riteway contends that it issued checks to BH&F to reimburse it for drywall materials it had purchased in connection with the job. *See* Huggins Affid. ¶ 15. It also contends that none of its payments related to carpentry work for which contributions were unpaid. *Id.* ¶ 16. These contentions are supported by an affidavit from Larry Huggins, the owner of Riteway. Riteway admits, however, that a BH&F "payroll advancement" request dated September 14, 2004 indicates that $20,558 in payroll had been issued up to that date. It also admits that it did not maintain time records for the

3

work of the BH&F employees.

The Funds maintain that Riteway owes contributions for hours BH&F worked at the Madden Wells job site prior to October 2004. In support, the Funds have offered the following evidence. First, they have submitted BH&F's work proposal for the Madden Wells job dated June 2004, proposing a price of $329,000 for the job. Second, they have submitted evidence that Riteway made payments to BH&F in August-September 2004 that Riteway recorded as "Advancement – Madden Wells." Third, they have offered invoices to Riteway from BH&F with dates in September 2004 seeking "payroll advancements." Pl. Ex. 14. The September 28, 2007 invoice lists a total contract amount of $354,395; lists (without explanation) an amount of $100,000 for "payroll account amount"; states that $38,598 of that amount had been "paid to date"; and requests another $9,535. The invoice bears the handwritten notation "approved," signed by someone named M. Ahmed. *Id.* Finally, the Funds have offered a letter that a representative of the Union sent to Riteway on September 17, 2004, saying that "it has come to our attention that you have subcontracted work to Busy Hands and Feet working at the job site commonly known as Oakwood Shores . . . ." Pl. Ex. 12. The letter does not disclose the basis for the accusation.

The Funds also contend that Riteway is liable for contributions based on payments to BH&F related to the Madden Wells job site for December 2004 and May 2005 when, the Funds argue, covered work was performed; for payments to BH&F for "sub-advancements" unrelated to the Madden Wells job site for which there are no corresponding invoices; and for payments to BH&F for "office maintenance" in 2004 and 2005 for which Riteway produced invoices with dates and amounts billed that did

4

not correspond.

**2.     Huggins Enterprises**

Riteway's check register reflects payments to Huggins Enterprises listed as "subcontractor payments." It is undisputed that Riteway has not provided any invoices supporting these payments.

Riteway contends, however, and the Funds do not dispute, that Huggins Enterprises has no employees and does not perform work but rather "is simply a name Mr. Huggins placed on a checking account [he] personally opened and control[s]." Pl.'s Resp. to Def.'s LR 56.1 Stat. ¶¶ 29-30. The Funds have also admitted Riteway's contention, supported by Huggins' affidavit, that Huggins "used the Huggins Enterprises bank account to issue checks to either [Riteway] or directly to trucking companies who had performed hauling work for [Riteway]." *Id.* ¶ 31. Huggins has stated in an affidavit that the checks from Huggins Enterprises constituted loans to Riteway that Riteway repaid; the Funds deny this allegation and note that Riteway's payments to Huggins Enterprises are listed in Riteway's check register as payments for subcontracting. *Id.* ¶ 32. The Funds admit, however, that Huggins Enterprises never performed carpentry work and that the Funds cannot identify anyone who performed work covered by the CBA who was paid by Huggins Enterprises. *Id.* ¶¶ 34-35.

## Discussion

The Funds contend that Riteway owes contributions for (1) payments made to BH&F prior to October, 2004; (2) payments made to BH&F in three other categories; and (3) payments made to Huggins Enterprises. Summary judgment is appropriate

when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Under ERISA, an employer must keep time records or similar records to permit an ERISA-governed fund to calculate benefits due and fulfill its reporting duties. *See Cent. States Pension Fund v. Cen. Transp., Inc.*, 472 U.S. 559, 573 (1985). The Seventh Circuit has determined that If a fund shows that an employer kept insufficient records and produces "an apparently sound accounting suggesting that money is owed," the burden shifts to the employer to show that it made contributions in the proper amount. If the employer does not provide an adequate explanation, the fund is entitled to prevail on summary judgment. If the employer provides an adequate explanation, the fund is required to demonstrate at trial its entitlement to additional payments. *Chicago Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co.*, 347 F.3d 262, 264-65 (7th Cir.2003); *see also, Laborers Pension Fund v. RES Envtl. Servs., Inc.*, 377 F.3d 735, 739 (7th Cir. 2004). To carry its initial burden of showing that money is owed, the Funds must show "that the individuals for which they seek to recover contributions performed at least some covered work during the audit time period." *Trs. of Chi. Painters & Decorators Pension (etc.) Trust Funds v. Destiny Decorators, Inc.*, No. 07 C 4236, 2009 WL 3188687, at *6 (N.D. Ill. Sept. 30, 2009).

The rationale for applying this burden-shifting analysis was set out by the Supreme Court in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946), interpreting a similar record-keeping provision imposed by the Fair Labor Standards Act. In *Anderson*, the Court concluded that if the fact of damage is certain, an

6

employee should not be penalized for his employer's failure to keep accurate records of his work such that the employee is unable to prove the extent of damages. *Id.* at 688.

1.  **Payments to BH&F prior to October 2004**

The Funds have provided evidence sufficient to show that BH&F performed covered work at the Madden Wells job site prior to October 2004. The key evidence in this regard consists of the BH&F invoices reflecting "payroll" payments for the period prior to October 1, 2004. Though the invoices do not specify the number of hours worked or the precise nature of the work performed, Riteway has admitted that it hired BH&F to install drywall and that this was work covered by the CBA, not to mention that $20,558 in payroll had been "issued" as of September 14, 2004. Def.'s Resp. to Pl.'s LR 56.1 Stat. ¶¶ 27, 28 & 34. Riteway has also conceded that it did not keep records of the time worked by BH&F workers – a rather obvious episode of noncompliance with ERISA's record keeping requirements.

In the face of this contemporaneous documentary evidence and Riteway's admissions, Huggins' bare denial that any of the payments to BH&F were for covered work done before October 2004 is insufficient. Riteway has not supported the denial with any documentation – such as invoices – and Riteway has admitted that "payroll" payments were issued to BH&F prior to October 2004. Riteway offers no explanation of how, under the circumstances, "payroll" payments could have involved anything other than covered work (there is no indication that BH&F did any work for Riteway at the job site other than the covered work Riteway has admitted BH&F performed). Under the circumstances, the Funds are entitled to summary judgment on the pre-October 2004 payments to BH&F. *See generally RES Envtl.*, 377 F.3d at 739.

**2.     Other payments to BH&F**

The Funds also contend that Riteway is liable for contributions based on three other categories of payments to BH&F: payments related to the Madden Wells job site for December 2004 and May 2005, during which Riteway reported no hours to the Funds for BH&F employees; payments for "sub-advancements" unrelated to the Madden Wells job site for which no invoices were provided; and payments to BH&F for "office maintenance" in 2004 and 2005 for which Riteway produced invoices stating "Billing for Service" with different dates and amounts billed. *See* Pl. Exs. 6 & 15 a-m.

With regard to the second and third categories, the Funds have failed to meet their initial burden to show that these categories involved at least some work covered by the CBA. Specifically, they have offered nothing other than supposition that the "sub-advancements" unrelated to the Madden Wells job site or the payments for "office maintenance" in 2004 and 2005 involved for carpentry work. Rather, the Funds offer only the fact that Riteway produced invoices that did not correspond directly to the dates and amounts billed. That is insufficient.

The Funds have, however, met their initial burden regarding the payments to BH&F related to the Madden Wells job site for December 2004 and May 2005. As noted earlier, the Funds' initial burden is to show that workers performed at least some covered work during the period in question. Riteway does not dispute that as of October 2004, BH&F employees were performing covered work at the job site, and it does not dispute that it reported hours worked by BH&F employees to the Funds for work there as late as June 2005. And as indicated earlier, Riteway concedes that it failed to maintain records for the time worked at the Madden Wells job site as required

by the CBA.  In addition, Riteway has made no effort to explain its failure to make contributions for these months.  The Funds are entitled to summary judgment as to liability for these months.

3.      **Payments to Huggins Enterprises**

The Funds are not entitled to summary judgment with regard to the payments to Huggins Enterprises.  (Indeed, had Riteway moved for summary judgment on these payments, the Court would have granted the motion.)  The Funds concede that they cannot identify anyone who performed covered work who was paid by Huggins Enterprises.  They rely only on checks described in Riteway's check register as "subcontractor payments."  That is insufficient, as there is no indication that Riteway only had carpentry subcontractors.

## Conclusion

For the reasons stated above, the Court grant plaintiffs' motion for summary judgment as to liability in part and denies it in part.  Specifically, the Court grants plaintiffs' motion with respect to the 381.5 hours based on payroll discrepancies; 32 hours worked by Willie Lee; the payments to Red Flooring and Vanique Customs Design; and the payments to BH&F prior to October 2004 corresponding to the "payroll advancement" documentation and the work done at the Madden Wells job site for December 2004 and May 2005.  The Court otherwise denies plaintiffs' motion  The case is set for a status hearing on March 24, 2010 at 9:30 a.m. for the purpose of

determining what is necessary to bring the case to a conclusion.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 15, 2010